IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| DEBORAH HOFFMAN and ALEXANDER TOSI, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:18-cv-00346-DCN |
| vs. | ) ) | **ORDER** |
| KANSAS CITY LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter comes before the court on defendant Kansas City Life Insurance Company's ("Kansas City") motion to exclude the testimony of plaintiffs Deborah Hoffman ("Hoffman") and Alexander Tosi's ("Tosi") (together, "plaintiffs") expert witness, ECF No. 28, and motion for partial summary judgment, ECF No. 29. For the reasons set forth below, the court **DENIES** the motion for partial summary judgment and **GRANTS IN PART** and **DENIES IN PART** the motion to exclude expert testimony.

## I. BACKGROUND

This case arises out of Kansas City's denial of a claim for life insurance. In March 2016, David Perrin ("Perrin") applied for a life insurance policy with Kansas City ("the Policy"). Plaintiff Hoffman is the beneficiary of the Policy, and plaintiff Tosi was assigned a part of the Policy. Perrin died in July 2016 of acute myocardial infarction and coronary artery disease. Kansas City denied Hoffman's claim to receive the benefits under the Policy, contending that Perrin's failure to disclose that he suffered from COPD on his application for the Policy constituted an intentional misrepresentation and that Kansas City would not have approved the Policy if they had known of the COPD.

1

Specifically, Kansas City points to Question 14 of the application for the Policy, which asks "[i]n the last 10 years, have you been diagnosed or treated for any disease or disorder of: . . . 14) Lungs: asthma, emphysema, tuberculosis?" ECF No. 29-8 at 5. Perrin did not submit a paper application, but rather made his application over the phone, with a Kansas City representative allegedly asking Perrin the application questions and Perrin verbally giving his answer. Perrin answered "YES" and then provided the Kansas City representative with additional details, such as that he last had asthma at the age of five but that he has no asthma now. Id. at 6. Page 9 of the application provides, "[i]t is understood and agreed as follows: (1) [t]he statements and answers recorded in all parts of this application are true and complete . . . ." Additionally, Page 10, above the signature line, contains the following language: "[i]t is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or a denial of insurance benefits."

According to Kansas City, the Policy permitted Kansas City to review Perrin's medical records after Hoffman submitted a claim for insurance benefits because Perrin died within the Policy's two-year "contestability period." In denying the claim for benefits, Kansas City relied on the medical records from Perrin's February 3, 2016 visit with Dr. Mark Little, Perrin's treating physician, which occurred 42 days before Perrin completed his application for the Policy. Dr. Little's type-written notes have the following under "Assessment" at the bottom of one page: "Hyperlipidemia ICD10: E78.5 COPD, bronchitic without exacerbation ICD10: J44.9." Kansas City argues that the failure to disclose the COPD was a knowingly false and material misrepresentation in the

application and rescinded the Policy. Kansas City then issued a check for $36,773.87 to Hoffman to refund the premium, which Hoffman cashed. ECF No. 29-3, Hoffman Dep. 93:18–94:2.

Plaintiffs field suit in the Charleston County Court of Common Pleas on December 11, 2017, alleging causes of action for (1) breach of contract, (2) bad faith, and (3) declaratory judgment. Kansas City removed the case on February 7, 2018. On March 1, 2019, Kansas City filed its motion to exclude expert testimony, ECF No. 28, and motion for partial summary judgment on the bad faith claim, ECF No. 29. On April 5, 2019, plaintiffs filed their responses. ECF Nos. 35 and 34. On April 19, 2019, Kansas City filed its replies. ECF Nos. 39 and 40. The court held a hearing on the matter on May 15, 2019. The motions have been fully briefed and are ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

3

trial." Id. at 249. Rule 56(c) requires summary judgment when the party who bears the burden of proof "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Anderson, 477 U.S. at 255

### III. DISCUSSION

**A. Motion for Summary Judgment**

Kansas City asks the court to grant summary judgment on plaintiffs' bad faith cause of action on the grounds that it was reasonable as a matter of law for Kansas City to believe that Perrin knew or should have known that he had COPD when he completed his application. "An insured may recover damages for bad faith denial of coverage if he or she proves there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract." Cock-N-Bull Steak House, Inc. v. Generali Ins. Co., 466 S.E.2d 727, 730 (S.C. 1996). Here, Kansas City's basis for denying coverage is that Perrin failed to disclose his COPD. For an insurance company to rescind a policy based on fraudulent misrepresentation, the insurer must demonstrate by "clear and convincing evidence: (1) the statement was false; (2) the falsity was made known to the applicant; (3) the statement was material to the risk; (4) the statement was made with the intent to defraud the insurer; and (5) the insurer relied on the statement when issuing the policy." Primerica Life Ins. Co. v. Ingram, 616 S.E.2d 737, 739 (S.C. Ct. App. 2005). Kansas City points to Dr. Little's notes, taken at an appointment several weeks before Perrin submitted his health insurance application, as evidence that Perrin knew that he had COPD. Thus, Kansas City argues, Perrin knew or should have known

that he had COPD and that his decision to not disclose it on the application for the Policy was done with an intent to defraud the insurer.

The court finds that it was reasonable for Kansas City to assume that Perrin knew that he had COPD. However, that is not the only question under the Primerica factors. Rather, the dispositive question here is whether there was a reasonable basis for Kansas City to decide, without further investigation, that Perrin intentionally chose not to disclose the COPD in order to defraud the insurer. As plaintiffs point out, Kansas City has not proven definitively that Perrin knew that COPD was a form of asthma, or that it was a respiratory or lung disease that should have been disclosed under Question 14, or even that Perrin understood Question 14 as requesting that he disclose any lung or respiratory disease or disorder. Notably, Question 14 does not merely ask that the applicant disclose any disease or disorder of the lungs; rather after "Lungs" there is a semicolon followed by the words "asthma, emphysema, tuberculosis?" In this respect, Perrin could have thought that he was only supposed to disclose any diagnosis of those three specific diseases or disorders. Because this application was conducted over the phone, the manner in which it was asked could have led Perrin to genuinely believe that he was only being asked to disclose one of those three specific lung diseases. The question then becomes whether it was reasonable for Kansas City to decide, based on this single reference to COPD in Dr. Little's notes, that Perrin intended to defraud Kansas City by leaving COPD off his application.

Kansas City argues that it was reasonable to believe that Perrin intentionally misrepresented his health condition in part because Perrin had financial incentives to obtain life insurance. According to Kansas City, Perrin was involved in a trucking

accident for which he received a structured settlement, which he then elected to sell to Corona Capital, LLC for a lump sum payment. In order to effectuate this transfer, he was required to obtain a life insurance policy; if Perrin had been denied life insurance, Corona Capital could have voided the agreement, denying Perrin the lump sum. Kansas City thus argues that, based on this financial incentive, it was reasonable for Kansas City to presume that Perrin had intentionally lied in not disclosing the COPD. Plaintiffs counter that it is unreasonable to assume based on this structured settlement that Perrin intended to defraud the insurer—if Perrin's intent was to defraud the insurer, plaintiffs reason, he would have most likely hidden his tobacco use, which he disclosed. Additionally, at the hearing, Kansas City could not definitively tell the court whether it knew about the structured settlement when it denied the claim. Thus, the court cannot rely on this information as evidence that Perrin had a particular incentive to lie on his application.

Kansas City does not appear to have done any investigation into the extent of Perrin's knowledge about his COPD diagnosis. There is conflicting evidence on whether Perrin even knew that he had COPD and a lack of evidence that he knew it should have been disclosed as a type of "asthma" as listed under Question 14. Furthermore, a jury could find that a reasonable person would not have known that question 14 was asking that the applicant disclose anything outside of the three disorders listed—asthma, emphysema, and tuberculosis—and that it was unreasonable for Kansas City to decide, without conducting any further investigation, that Perrin intended to defraud the insurer by not disclosing his COPD. As noted above, Kansas City must demonstrate the Primerica factors by clear and convincing evidence. Thus, the court cannot conclude as a

matter of law that Kansas City was reasonable in the manner in which it processed Hoffman's claim under the Policy or in denying the claim.

This case differs substantially from bad faith claims brought in cases where an insurer merely has to decide whether a particularly injury falls within the scope of coverage of an insurance policy or whether the person submitting the claim is a covered entity under the terms of the policy. See, e.g. Cock-N-Bull Steak House, Inc. 466 S.E.2d at 728–29 (involving a dispute over whether the damage to the plaintiffs' property fell under certain categories of coverage in the policy); Helena Chem. Co. v. Allianz Underwriters Ins. Co., 594 S.E.2d 455, 462 (S.C. 2004) ("[There was] a reasonable basis for finding that the cleanup costs were not 'damages' within the meaning of the policies. Therefore, the insurers did not improperly contest coverage . . . ."). In those sorts of cases, it is often reasonable for an insurer to have denied a claim based on its interpretation of the policy's coverage, because the denial of the policy hinges on the definition and/or interpretation of a particular term, and insurers have a right to litigate meritorious issues. See Greene v. Durham Life Ins. Co., 336 S.E.2d 478, 480 (S.C. 1985) (holding that an insurer "should not be penalized for its decision to litigate a meritorious defense."); Helena Chemical Co., 594 S.E.2d at 462 ("[I]f there is a reasonable ground for contesting a claim, there is no bad faith."). Here, the reasonableness of Kansas City's denial of the claim depends upon whether it was reasonable for Kansas City to decide that Perrin intentionally did not disclose his COPD with the intent to defraud Kansas City and whether it was reasonable for Kansas City to make this decision without conducting further investigation into Perrin's knowledge and intent. This is a more nuanced factual

question than whether a particular injury or person is entitled to coverage under the terms of a policy. Thus, the court denies the motion for partial summary judgment.

### B. Motion to Exclude Expert

Kansas City next asks the court to exclude the testimony of plaintiffs' proffered expert Maurice Kraut ("Kraut"). Plaintiffs have hired Kraut to testify regarding industry standards for handling claims and to opine on whether Kansas City failed to properly process the life insurance claim that Hoffman submitted under the Policy. While Kansas City does not object to Kraut testifying generally about insurance claims practices, they seek to exclude any testimony about life insurance claims practices or life insurance policies on the grounds that Kraut does not have specialized knowledge in life insurance.

Kansas City contends that Kraut is not qualified as an expert in life insurance under Federal Rules of Evidence 702 and Daubert v. Merrell Dow Pharmas., Inc, 509 U.S. 579 (1993) to testify as an expert on insurance claims processing.

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts serve as gatekeepers for expert testimony. The court has a "special obligation" to ensure that expert testimony is relevant and reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).

Under Daubert v. Merrell Dow Pharmas., Inc, 509 U.S. 579 (1993), the court must address two questions: first, whether the expert's testimony is based on "scientific knowledge"; and second, whether the testimony "will assist the trier of fact to understand or determine a fact in issue." Id. at 592. The first question is answered by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." Id. at 592–93. Several nondispositive factors should be considered in determining the reliability of a particular scientific theory or technique: whether it (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error; and (4) has attained general acceptance in the pertinent scientific community. See id. at 593–94. In considering these factors, the focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. The factors are not exclusive; what factors are relevant to the analysis "depends upon the particular circumstances of the particular case at issue." Kumho Tire, 526 U.S. at 150.

The second inquiry "goes primarily to relevance." Daubert, 509 U.S. at 591. Relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. Id. at 593. "A review of the caselaw after Daubert shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee's Note to 2000 Amendments. "Daubert did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" Id. (quoting United States v. 14.38 Acres of Land Situated in Leflore Cnty., 80 F.3d 1074, 1078 (5th Cir. 1996)).

When determining if an expert's qualifications are sufficient under Daubert, the court should "'consider the proposed expert's full range of experience and training,' not just his professional qualifications." Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 162 (4th Cir. 2012) (quoting United States v. Pansier, 576 F.3d 726, 737 (7th Cir. 2009)). "Generally, the test for exclusion is a strict one," and "[o]ne knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion." Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989) (citing Martin v. Fleissner GMBH, 741 F.2d 61, 64 (4th Cir. 1984)). Courts have generally found experts to lack the requisite qualifications only when the proposed expert clearly has no relevant qualifications. See Thomas J. Kline, Inc., 878 F.2d at 799 (proposed expert for credit and price discrimination case not qualified because she was not an economist, had published nothing about price discrimination, credit, or antitrust, worked primarily on analyzing companies' financial health, and had no personal experience making credit decisions); Zellers v. NexTech Ne., LLC, 533 F. App'x 192, 197 (4th Cir. 2013) (proposed expert seeking to testify to the cause of plaintiff's medical symptoms as being exposure to toxic gas not qualified because she was a neurologist with no training in the field of toxicology and her knowledge of gas toxicity simply came from articles downloaded from the Internet).

Plaintiffs contend that Kraut is qualified to offer expert opinion on all insurance claims processes, including those for life insurance, because Kraut has been working in the insurance industry for thirty years, during which time he has focused on the claims process by supervising claims examiners, reviewing and analyzing pending claims, and managing claims that were in litigation. Although Kraut has never testified in court

regarding a life insurance case and has never been qualified as an expert in a life insurance case, he has testified numerous times in court as a claims expert. Kraut also states that in his thirty years of experience, he has reviewed and handled life insurance claims and investigations, and that the theories and practices between life insurance claims investigations and other insurance claims investigations are generally the same. Kraut Dep. 25:21–26:20, 42:17–43:3.

The court finds that Kansas City's concerns about Kraut's lack of nuanced expertise in insurance claims processes are slightly misplaced. First, Kraut himself says that he has had exposure to insurance claims, and that—as someone who has worked in the insurance claims processing field for thirty years—the theories and practices that underlie all insurance claims processing can be applied to processing claims for life insurance. Kansas City's concerns go more to the weight that a jury may ascribe to his testimony, not whether he is qualified as an expert to offer insight into the standards and practices for claims handling. See N.O. v. Alembik, 160 F. Supp. 3d 902, 908 (E.D. Va. 2016) (It is "well-settled that gaps in an expert's knowledge generally go to the weight of the witness's testimony, not its admissibility."); Deutsch v. Novartis Pharm. Corp., 768 F. Supp. 2d 420, 425 (E.D.N.Y. 2011) ("If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." (quoting In re Zyprexa Prods. Liab. Litig., 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007))). Rather, Kansas City's concerns with Kraut's qualifications to testify about the processing of life insurance claims are better addressed during cross-examination.

Of course, there are certain topics about which Kraut is not qualified to testify as an expert. First, Kraut may not testify about whether Perrin was properly diagnosed with COPD, which is a question for a medical expert or treating physician. This does not preclude Kraut from discussing the documents that he relied on to form his opinion regarding the claims processing, including the medical records and depositions that discuss Dr. Little's COPD diagnosis. Next, Kraut may not testify regarding Perrin's intent, although he can offer his opinion as a claims handling expert on whether there was a reasonable basis for Kansas City to decide, based on its investigation or lack thereof, that Perrin intended to deceive Kansas City in failing to disclose the COPD diagnosis. Finally, as Kraut is being admitted as an expert in claims processing and handling, and not as an expert in all aspects of life insurance, Kraut may not testify regarding whether Kansas City's underwriting process for the Policy was appropriate or whether the application for the insurance policy itself violates the standards of care in the life insurance industry. Despite these limitations, Kraut is otherwise qualified to testify as an expert in insurance claims processing, and his testimony on this matter could assist the jury in its fact-finding mission. Thus, the court grants in part and denies in part the motion to exclude.

## IV. CONCLUSION

Based on the foregoing, the court **DENIES** the motion for partial summary judgment on the bad faith claim and **GRANTS IN PART** and **DENIES IN PART** the motion to exclude expert testimony.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 30, 2019**
**Charleston, South Carolina**